(135 So. 38)

## SAMPLE et al. v. WHITAKER et al.
### No. 30991.

April 27, 1931.

Rehearing Denied May 25, 1931.

Lee & Gilmer, of Shreveport, for appellants.

Frank J. Looney and Frank O. Looney, both of Shreveport, and Parsons & Colvin, of Mansfield, for appellees.

Parsons & Colvin, of Mansfield, for defendant C. T. Ruffin.

Craig, Bolin & Magee, of Mansfield, for P. C. Fair and H. B. Sample.

OVERTON, J.

Plaintiffs are asserting title to all of the minerals under the east half of the southeast quarter of section 5, township 13 north, range 13 west, situated in the parish of De Soto, comprising 80 acres. Defendants refuse to recognize plaintiffs' claims, and object to their exploiting for the minerals.

S. G. Sample, one of the plaintiffs, bought these 80 acres, together with another 80 acres, consisting of the south half of the northeast quarter of the same section, township, and range, from O. H. P. Sample, on November 29, 1902, during the existence of the community of acquests and gains between the purchaser and his wife, Emma McCrory Sample. Thereafter S. G. Sample sold to Isaac Whitaker the south half of the northeast quarter of section 5, the mineral rights in which were involved in the case of Sample v. Whitaker, 171 La. 949, 132 So. 511, and to York Whitaker, Jr., the east half of the southeast quarter of that section, which is the land involved in this case.

The sale to York Whitaker, Jr., was made on November 20, 1911, and contains a reservation, in favor of S. G. Sample, of all the minerals, under the land, together with the right to enter upon the property, at any time, for the purpose of exploiting for them, and of reducing them to possession.

On the following day, namely, on November 21, 1911, York Whitaker, Jr., sold the south half of the northeast quarter of section 5, the minerals in which were involved in the Isaac Whitaker Case, supra, without any mention of mineral rights, to Isaac Whitaker, but retained the east half of the southeast quarter

of that section, which, upon the face of the deed, conveying the land to him, was subject to the foregoing mineral reservation, and which, as stated, is the land involved in this case.

Mrs. Sample, the wife of York Whitaker's vendor, died, intestate, in September, 1918, leaving a husband and seven minor children, one of whom has since died intestate and without issue. Of the remaining six, three were still minors when this suit was instituted, in May, 1930.

York Whitaker, Jr., has sold from time to time various mineral interests in the land to others, and some or all of these vendees have sold to still others, who are made defendants in this suit. There are several calls in warranty.

The case presents three questions. The first is, Did the land, when acquired by S. G. Sample in 1902, become a part of the community between Sample and his wife, Mrs. Emma McCrory Sample? The second is, Was the reservation embodied in the deed from S. G. Sample to York Whitaker, in November, 1911, erroneous and due to a mutual error on the part of the parties to the deed? The third is, Has the mineral reservation in the deed, executed by Sample to Whitaker, in 1911, been lost by the prescription of ten years, liberandi causa?

■ The property was acquired by S. G. Sample during the community between him and his wife, and is therefore presumed to have been community property. The property was, in effect, held to belong to the community in Sample v. Whitaker, 171 La. 949, 132 So. 511, and the question is not pressed in this court. The question of error in the confection of the deed, as to the making of the reservation, was also, in effect, disposed of in the foregoing case. It is not pressed

here. Therefore it is unnecessary to give the first two questions any further consideration.

The third question, which presents the applicability of the prescription of ten years liberandi causa, prescribed by articles 789 and 3546 of the Civil Code, under the facts of this case, is a serious question, not free from difficulty, due largely to the fact that we have no provisions of law directly applicable, on vital points, to such rights as mineral reservations, sales, and leases of mineral rights by the owner of the land.

■ As S. G. Sample acquired the real estate, on which he made the mineral reservation, during the existence of the community, the mineral rights reserved constituted an asset of the community, and, upon the death of Mrs. Sample, her undivided half interest in those rights descended to her children, all of whom were then minors. Three of them were still minors, when this suit was instituted. Therefore, at the institution of the suit, the mineral reservation was owned in indivision by majors and minors, one of whom, at least, is still a minor.

One of the questions presented is, Do the provisions of law, releasing property from servitudes created by mineral reservations and mineral leases for nonuse for ten years, operate against minors?

■ Mineral reservations and mineral leases are deemed servitudes in favor of the person, in the nature of a limited usufruct. Palmer Corporation v. Moore, 171 La. 774, 132 So. 229, 231. They are real rights in favor of the person instead of an estate. Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 855, 91 So. 207. The real estate to which such servitudes attach is released from the servitudes by their nonuse for a given period, as provided by articles 789 and 3546 of the Civil Code. These articles are usually

cited as pertinent to such reservations and leases.

It is one of the contentions of defendants that the articles cited do not create periods of prescription, but periods of pre-emption, which, it is urged, run against minors as well as against majors, just as does the pre-emption of three years, prescribed in the Constitution for the repose of tax sales. The first of the articles cited, namely, article 789, reads: "A right to servitude is extinguished by the nonusage of the same during ten years." The second of the articles cited, namely, article 3546, reads: "The rights of usufruct, use and habitation and servitudes are lost by nonuse for ten years." It is urged that the employment of the words "extinguished" and "lost," in these articles, instead of the word "prescribed," denotes that the articles create a pre-emption instead of a prescription.

Defendants' position is clearly incorrect. That the first article creates a prescription instead of a pre-emption is made manifest, whatever the effect of the difference may be, by what precedes the article and by what follows it in the same section of the Code. Thus article 783 declares that among the ways by which servitudes may be extinguished is prescription. Article 790 declares the time when the period of prescription, not pre-emption, for nonuse begins, and other articles of the Code in the same section, refer repeatedly to the period necessary for the extinguishment of the servitude as being a prescription. It may be noted that, in the French text of the corresponding article, namely, article 785, of the Code of 1825, the expression used is "extinguished or prescribed," instead of merely the word "extinguished" as is used in the English text of that Code and in the Code of 1870. Where there is a conflict between the English and French texts of the Code of 1825, the French text prevails. Phelps v. Reinach, 38 La. Ann. 547.

As to the second article cited, namely, article 3546, we find no such difference between it and article 789 as to cause us to reach a different conclusion from the one reached under article 789. Article 3546 is to be found under section 3, title 23, c. 31, of the Code, under the title, "Of the Prescription which Operates a Release from Debt," and under the subheading, "Of the Prescription of Ten Years." In the absence of anything to the contrary, the article should be viewed as establishing a prescription, and not a pre-emption, as should article 789.

As the mineral reservation in this instance is owned in common with minors, and as there was no use made of it for more than ten years from the day it was made up to the institution of this suit, the question arises whether the prescription, pleaded, runs against minors, or is suspended as to them?

Prescription does not run against minors, but is suspended, as to them, during their minority, save in those instances specifically provided by law. Sanders v. Ohio Oil Co., 155 La. 740, 99 So. 583; Civil Code, art. 3554. Among the instances specifically named is not to be found the prescription of ten years liberandi causa. Hence the running of that prescription is suspended as to minors, so long as their minority continues.

However, the main question at issue goes further than answering the foregoing question. It is urged by plaintiffs, who are asserting the mineral reservation, that the effect of the suspension of the prescription, as to minors, suspends it as to majors also.

Article 802 of the Civil Code reads that: "If among the coproprietors there be one against whom prescription can not run, as

for instance a minor, he shall preserve the right of all the others." This article is the logical sequence of the principle that the rights of servitude are indivisible, a principle which was for the first time incorporated in the Code of 1825 as article 652, and repeated in the Revised Civ. Code of 1870, as article 656, although, as provided by article 657 of the Revised Civ. Code of 1870, which is article 653 of the Code of 1825, the advantages resulting from the servitude may be divided, whenever they are susceptible of division.

While this court has defined, as we have said, a mineral reservation or lease to be a servitude in favor of the person, in the nature of a limited usufruct, it has never defined it to be a usufruct, which is declared by article 538 of the Civil Code to be divisible. We think that it is indivisible in its nature, although the advantages that may be derived from it are divisible. It must stand or fall as a whole. In the case of E. M. Clark v. Tensas Delta Land Co., 136 So. 1,[1] this day decided, it is held that a mineral reservation or lease is indivisible, and the reservation or lease is there designated as a servitude.

While article 802 of the Civil Code, relative to the suspension of prescription where the servitude is owned by both majors and minors, is found among those articles of the Code treating of real or predial servitudes, yet its provisions, as observed by plaintiffs, are merely declaratory of a general principle to the effect that, as to an indivisible real right or servitude, where the prescription applicable to it is suspended as to one of several joint owners of the right, it is suspended as to all of them, and this necessarily so, because an indivisible right or obligation cannot be extinguished in part and exist in part.

[1] Post, p. 913.

Our conclusion is that, as the mineral reservation is owned by both majors and minors, the prescription has not accrued, and therefore should be overruled.

The trial court rendered judgment, rejecting plaintiffs' demand. The judgment should be reversed, and judgment rendered for plaintiff, for, the defenses set up not having been found well grounded, and plaintiffs, having established their case, are entitled to judgment.

There are several calls in warranty. As the trial court rejected plaintiffs' demand, there was no occasion for it to pass on them. It has been suggested that we remand the case, so far as the calls in warranty are concerned, to the lower court to be passed upon. We have concluded to do so.

For the reasons assigned, the judgment appealed from is set aside, and judgment is now rendered, recognizing plaintiffs to be the owners, in the proportions set out in their petition, of all the mineral rights reserved by S. G. Sample in the deed from him to York Whitaker, Jr., on the east half of the southeast quarter of section 5, township 13 north, range 13 west, together with the right of egress and ingress for the purpose of exploiting for minerals and reducing them to possession, all as stated in said reservation, contained in said deed, and ordering defendants to permit plaintiffs to exploit for minerals on said land, in accordance with said reservation, and to develop said mineral rights and to enjoy and exercise all other rights and privileges reserved plaintiffs in said reservation, and to deliver such possession of said 80 acres as may be necessary for such purpose, and it is further ordered that, in so far as relates to the calls in warranty in this case, the case be remanded to the lower court to enable said court to dispose of said calls; defendants to pay the costs of this ap-

peal and the costs of the lower court on the main demand, the costs of the calls in warranty to abide the decision of said calls.

O'NIELL, C. J., dissents.