O’NIELL, J.
Plaintiff, being the owner in possession of several tracts of' land in the parish of De Soto, brought seven jactitation suits against parties who were asserting title to whatever oil, gas or other minerals were in or under the lands. The complaint, in substance;'was that the claim of each defendant was, in its nature, the assertion of a real right upon the property and was therefore a slander of plaintiff’s title.
The Nabors Oil & Gas ‘Company was made defendant in each suit, because the corporation claimed title to the oil, gas and other minerals in all of the lands, and had granted a mining lease to each of the parties who were made codefendants in six of the suits, respectively.
The suits were numbered 8194, 8196, 8197, 8198, 8199, 8200 and 8203 on the docket of the district court; and for convenience, we will so designate the different suits.
The Standard Oil Company of Louisiana is codefendant in the suit No. 8194, for having obtained from the Nabors Oil & Gas Company a mining lease on the-N. E. Y of N. W. Y of Sec.'23, in T. 12 N., R. 12 W., containing 40 acres.
W. B-. McCormick, of Caddo parish, La., is codefendant in the suit No. 8196, for having obtained from the Nabors Oil fe Gas Company a mining lease on the N. W. Y of S. E. % of Sec. 7, in T. 12 N., R. 11 W., containing 39.72 acres.
M. R. Lare, of Wilkinsburg, Pa., and M. W. Everson and G. C. Lewis, of Pittsburg, Pa., are codefendants in the suit No. 8197, for having obtained from the Nabors Oil & Gas Company a mining lease on the S. W. % of S. E. Y of Sec. 23, in T. 12 N., R. 12 W., containing 40 acres.
The Gulf Refining Company, domiciled in New Orleans, and James N. Snyder, of Pitts-burg, Pa., are codefendants in the suit No.' S198, for having obtained from the. Nabors Oil & Gas Company a mining lease on the E. % of E. % of N. E. % and the S. % of N. W. Y of Sec. 5, in T. 12 N., R. 11 W., containing approximately 60 acres.
The Louisiana Oil Refining Corporation, domiciled in Shreveport, La., is codefendant in suit No. 8199, for. having obtained from the Nabors Oil & Gas Company a mining lease *103 on.tlae' N. Vz of N. W. Vi of See. 27, in T. 12 N., R. 12 W., containing 80 acres.
■The Nabors Oil & Gas Company alone is defendant in the suit No. 8200, asserting title to the oil, gas, and other minerals in the land described as the S. TV. % of Sec. 25, in. T. 12 N., R. 12 W., containing 160 acres.
• The Producers’ Oil Company, domiciled in Houston, Tex., is codefendant in the suit No. 8203, for having obtained from the Nabors Oil & Gas Company a mining lease on several tracts of land, containing in the aggregate 1,224.39 acres; being a tract of 284.96 acres in the southeast corner of Sec. 6, and the E. Vx of N. W. % of Sec. 7, in T. 12 N., R. 11 W., containing 79.43 acres; and the E. Vz of N. E. U, and TV. Vx of S. W. % of N. E. Vi of Sec. 9, containing 100 acres; the S. E. % of S. TV. y. of Sec.. 11, containing 40 acres, the E. Vz of N. E. 14. and W. Vx of N. W. Vi of Sec. 13, containing 160.acres, the S.. E. Vi of N. IV. 34 and N. E. Vi of S. W. % and S. TV. Í4 of N. E. V, of Sec. 14, containing 120 acres, the S. E. 3,4 of Sec. 15, containing 160 acres, the S. IV. 14, of N. TV. 34, and N. IV. 14 of S. W. 14. and N. IV. 14 of N. E. 14 of Sec. 23, containing 120 acres, and the S. E. 14 of Sec. 26, containing 160 acres, in T. 12 N., R. 12 IV.
In answer to each suit, the defendants asserted ownership of the oil, gas and other minerals in. plaintiff's land. To this, the plaintiff answered that the defendants and their authors in title had acquired from J. H. Nabors, J. M. Nabors, IV. A. Nabors, Eugene A. Nabots and the widow of E. R. Nabors (who once owned the property in fee simple), not ownership of the minerals, but only a real right or servitude upon the land, to bore and explore for oil, gas and other minerals, and to take such minerals as might be found and reduced to possession ; and plaintiff pleaded (as in the suit of Frost-Johnson Lumber Co. v. Heirs of Sailing [No. 22916] 91 South. —, 150 La. —,[1]), that the defendants’ real rights or servitudes- were lost or forfeited for nonuser, by the prescription of 10 years, under articles 789, 3529 and 3546 of the Civil Code.
The suits were consolidated and tried as one.
The. district court rendered a separate judgment in each case, rejecting the demand of the plaintiff, Erost-Johnson Lumber Company.
To avoid confusion, let it be understood that when we refer to the plaintiff in this opinion we mean the Frost-Johnson Lumber Company, plaintiff in the original jactitation suit; although the suits may be Regarded as having been, by the pleadings, converted into petitory actions, in which the original defendants became plaintiffs, asserting title to the minerals or mineral rights.
During the trial of the case, the plaintiff waived all claim to the solid, minerals, and has reiterated the waiver in the briefs filed in this court. The contest is therefore restricted to the fugitive minerals, oil and gas, if any there be, in the plaintiff’s lands.
Plaintiff acquired title to the lands involved in all of the suits by purchase from the De Soto Land & Lumber Company, on the 14th of February, 1910, and the deed was properly recorded on the 26th of February, 1910. There was no reservation in the instrument of minerals or mineral rights, nor mention of any previous reservation or disposition of the minerals or mineral rights.
The De Soto Land & Lumber Company acquired title to the lands in sections 6 and 7, in T. 12 N., R. 11 IV., and the lands in section 9 and the S. W. 14 of N. E. 14 of Sec. 14, in T. 12 N., R. 12 W. (all of which lands, together with other tracts, are involved in suit No. 8203), by purchase from IV. A. Nabors, on the 11th of May, 1906; and the deed was recorded on the 18th 'of May, 1906, in the conveyance records of De Soto parish.
*105 The deed last mentioned contained this stipulation, viz.:
“It is further stipulated that all mineral rights are expressly reserved, having heretofore been sold by the present vendor to the Louisiana Coal & Lumber Company, Limited, subject to the stipulations contained in such ■sale of mineral rights to said company.”
The De Soto Land & Lumber Company acquired the balance of the land (all that is involved in these suits except what was acquired from W. A. Nabors) by purchase from J. M. Nabors, on the 11th of May, 1906; and the deed was properly recorded on the 19th of that month. The instrument contained .precisely the same stipulation, with regard to the reservation of the mineral rights, that was made in the deed from W. A. Nabors to the De Soto Land & Lumber Company.
It was admitted, in the trial of the case, that AV. A. Nabors and J. M. Nabors were, respectively, the owners of the lands which they sold to the De Soto Land & Lumber .Company.
The defendants’ chain of title to the mineral rights is as follows:
J. M. Nabors, AV. A. Nabors, J. H. Nabors, Eugene A. Nabors and the widow -of E. R. Nabors (who are admitted to have been then the owners of the lands in fee simple), sold to the Louisiana Coal & Lumber Company, on the 2Sth of January, 1904, “all of the oil, gas and coal and other minerals in and under” all of the lands described in plaintiff’s petitions, except the lands in sections 13, 15, 23 and 27, and the tract of 320 acres described as S. AV. % of Sec. 25 and S. E. i/i of Sec. 26, in T. 12 N., R. 12 W. The deed was properly recorded on the 5th of February, 1904.
The description of what the instrument purported to convey is in these words:
“All of the oil, gas and coal and other minerals in and under the following described lands, * * together with the right of ingress and egress at all times for the purpose of drilling, mining and operating for mineral, and to conduct all operations and to lay all pipe necessary for the production, mining and transportation of the oil, gas, water, coal or other minerals, with the right to use' sufficient water, gas or oil to operate said property.”
Florian Giaque (who was the owner in fee simple) sold to the Louisiana Coal & Lumber Company “all of said vendor’s right, title and interest in and to all oil, gas and coc-.I and other valuable minerals that may be under the surface of” the lands in sections 13, 15, 23, and 27, in T. 12 N., R. 12 AV., on the 31st of May, 1904; and the deed was properly recorded on that day^
The Louisiana Coal & Lumber Company, through its liquidating commissiohers, sold to J. M, Nabors on the 22d of January, 1911, “all of the oil, gas and coal and other minerals in and under” all of the lands described in the deed from J. M., W. A., J. I-I., Eugene A. and the widow of E. R. Nabors, and in the deed from Florian Giaque, to the Louisiana Coal & Lumber Company. The deed was properly recorded on the 26th of January, 1911.
J. M. Nabors sold to the defendant Nabors Oil & Gas Company, on the 14th of August, 1911, by the sam'e description, what he had acquired from the liquidating commissioners of the Louisiana Coal & Lumber Company, and tire deed was- properly recorded on the 1st of September, 1911.
On the 2d of July, 1914, that is, more than eight years after AY. A. and J. M. Nabors had sold the'lands to the De Soto Land & Lumber Company, and more than four years after the latter had sold to the Frost-Johnson Lumber Company, J. M. Nabors sold to the defendant Nabors Oil & Gas Company “all the oil, gas, coal and other minerals that may underlie and be and be found in or under, or that may be produced from the surface of,” the S. E. % of Sec. 26 and S. AV. % of Sec. 25, in T. 12 N., R. 12 AY. Although the sale was made for only “the sum of one ($1.00) dollar and other valuable considerations,” ! there is no evidence, nor is it argued, that the *107 deed was made for tlie purpose of correcting an error or omission in the previous deed from J. M. Nabors to the Nabors Oil & Gas Company.
[1] Of course, it could not avail the defendants, in the suits Nos. 8200 and 8203, if they had pleaded that the omission of the S. W. 14 of section 25 and S. E. % of section 26 from the description in the deed from the Nabors family to the Louisiana Coal & Lumber Company was an error or oversight; because a subsequent attempt to correct the error could not operate to the prejudice of the Frost-Johnson Lumber Company, or its author in title, the De Soto Land & Lumber Company, after the latter had bought the land from W. A. Nabors, acting upon the company’s faith in the public records.
The deed from J. M. Nabors to the Nabors Oil & Gas Company, dated the 2d of July, and recorded on the 25th of August, 1914, contains the following paragraphs, showing, on the face of the instrument, that the principal defendant in the suits affecting the S. W. % of Sec. 25 and S. E. % of Sec. 26, in T. 12 N., R. 12 W., bought subject to the rights previously acquired by the Frost-Johnson Lumber Company, viz.:
“It is understood that the surface rights of the aforesaid property are now owned by the Frost-Johnson Lumber Company, and the said Frost-Johnson Lumber Company, its successors and assigns, shall at all times retain the use and possession of the surface of hereinabove described premises, and the same shall not be in any manner limited or changed by this contract, except, however, that the said purchaser shall have the right to joint occupancy with the said Frost-Johnson Lumber Company, its successors and assigns, (of) such portion of such lands as to enable full use and enjoyment of the rights granted by this contract.
“It is further understood that the southeast quarter (S. E. %) of section twenty-six (26), township twelve (12) north, range twelve (12) west, is now under lease to the Producers’ Oil Company, and the southwest quarter (S. W. J/i) of section' twenty-five (25), township twelve (12) north, range twelve (12) west, is not under any- oil or gas lease of any kind whatsoever; and, to that which is now under lease, said purchaser” (meaning seller) .“does hereby transfer, set over, convey and- assign to and in favor of the said purchaser all money rentals, rental's on gas wells, and royalties on oil, that may be hereafter forthcoming and paid under said lease; to which oil and gas lease, special reference is hereby made' for greater certainty; same appearing on file and of record in the re-, eorder’s office in and for the parish of De Soto.”
The oil and gas lease on the S. E. % of Sec. 26, T. 12 N., R. 12 W.,' was made by J. M. Nabors to the Producers’ Oil Company on the 16th of May, 1913, and was recorded on that day, more than seven years after the De Soto Land & Lumber Company had acquired title to the land, and more than three years after the De Soto Land & Lumber Company had- sold it to the Frost-Johnson Lumber Company.
[2] The only argument in defense of the suit No. 8200, affecting the S. W., % of Sec. 25, and suit No. 8203, so far as it affects the S. E. % of Sec. 26, in T. 12 N., R. Í2 W., is the contention that the stipulation in the deeds from W. A. Nabors and J. M. Nabors to the De Soto Land & Lumber Company (plaintiff’s author in title), “that all mineral rights are expressly reserved, having heretofore been sold by the present vendor to the Louisiana Coal & Lumber Company, Limited, subject to the stipulations contained in such sale of mineral rights to said company,” must apply to the mineral rights on the tract of 320 acres described as the S. W. % of Sec. 25 and S. E. % of Sec. 26, even though the mineral rights on that tract of land had not then been sold by either W. A. Nabors or J. M. Nabors to the Louisiana Coal & Lumber Company or to any one else.
The language of the reservation, however, does not imply that the vendor, in either sale to the De Soto Land & Lumber Company, intended to reserve for himself the mineral rights on any of the land. The language implies that the vendor, in each of the sales to the De Soto Land & Lumber Company, *109 excepted from the sale only the mineral rights which had already been transferred to the Louisiana Coal & Lumber Company; for the vendor could not have made the reservation “subject to the stipulations contained in such sale of mineral rights to said company,” except as to mineral rights which had actually been sold to said company. The law, however, resolves in favor of the vendee whatever doubt there may be as to whether the vendor, J. M. Nabors, intended to reserve any mineral rights for himself or intended merely to except from the sale to the De Soto Land & Lumber Company whatever mineral rights he had already conveyed to the Louisiana Coal & Lumber Company. “The seller is oound to explain himself clearly: any obscure or ambiguous clause is construed against him.” R. C. C. art. 2474; Arnauld v. Delachaise, 4 La. Ann. 120; Heirs of Delogny v. Mercer, 43 La. Ann. 205, 8 South. 903; Stevenson v. Short, 52 La. Ann. 972, 27 South. 350; State v. McAdams, 106 La. 726, 31 South. 187; Bagley v. Rose Hill Sugar Co., 111 La. 273, 35 South. 539.
Our conclusion is that the D.e Soto Land & Lumber Company, and, in turn, the plaintiff Frost-Johnson Lumber Company, acquired title in fee simple t*o the tract of 320 acres described as the S. W. ]4 of Sec. 25, and S. E. % of See. 26 in T. 12 N„ R. 12 W.
[3,4] As to the other lands described in plaintiff’s petitions, our opinion is that the plea of prescription of ten years, liberandi causa, cannot prevail. According to our ruling in the case of Frost-Johnson Lumber Company v. Heirs of Sailing et al. (No. 22, — 916) 91 South. —,[2] decided to-day, the Louisiana Coal & Lumber Company acquired, by the deeds from J. M., W. A., Eugene A. and the widow of E. R. Nabors, and from Florian Giaque, and the defendant Nabors Oil & Gas Company acquired through mesne conveyances from the Louisiana Coal & Lumber Company, not ownership of the fugitive minerals, oil and gas, but only a real right to enter upon the lands and bore and explore for oil and gas and to become the owner thereof by reducing it to possession. But the prescription of 10 years, liberandi causa, had not run its course when these suits were filed. The plaintiff’s vendor, the De Soto Land & Lumber Company, had recognized and acknowledged the real rights of the Louisiana Coal & Lumber Company and its transferees, in the purchase of the lands from W. A. and J. M. Nabors, in the two deeds dated the 11th of May, 1906. These suits were filed and put at issue in May, 1915, only nine years after the plaintiff had acknowledged the real obligation, or mineral rights upon the land. The acknowledgment, or reservation, of the mineral rights, interrupted the prescription; for there is no reason why the reservation should not have the same effect as if the mineral rights had not already been sold by W. A. and J. M. Nabors when they excepted them from their sales to the Frost-Johnson Lumber Gompany.
The judgments rendered in suits No. 8194, 8196, 8197, 8198 and 8199 are affirmed. The judgment rendered in suit No. 8200 is annulled and reversed in so far as it recognizes the defendant as having a right to any oil or gas in or under the land described m plaintiff’s petition in that suit; and the judgment rendered in suit No. 8203 is annulled and reversed in so far as it recognizes the defendants in that suit as having a right to any oil or gas in or under the land described as the S. E. % of Sec. 26, in T. 12 N., R. 12 W., and in all other respects the judgment in that suit is affirmed. It is therefore ordered, adjudged and decreed that the title of the plaintiff, Frost-J ohnson Lumber Company, to the tract containing 320 acres described as S. W. % of Sec. 25, and S. E. % of Sec. 26, in T. 12 N., R. 12 W., shall be and it is free from any real right or obligation in favor of the Nabors *111 Oil & Gas Company or the Producers’ Oil Company, with regard to any oil or gas in or under said tract of land. The Frost-Johnson Lumber Company is to pay the costs in the suits No. 8194, No. 8196, No. 8197, No. 819S and No. 8199; and the Nabors Oil & Gas Company is to pay the'costs in the suits No. 8200 and No.. 8203.

 Rsbearing-pending.

 150 La. —.